

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| CHELSEA F. WEISNER, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD81425 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | FILED: February 19, 2019 |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County
The Honorable Susan E. Long, Judge**

**Before Division Two: Alok Ahuja, P.J., and Thomas H. Newton
and Mark D. Pfeiffer, JJ.**

Respondent Chelsea Weisner was arrested for driving while intoxicated. After her blood alcohol concentration tested over the legal limit, the Director of Revenue suspended her driving privileges. Weisner filed a petition for a trial *de novo* in the Circuit Court of Jackson County. Following a bench trial, the circuit court held that the results of the breath test establishing Weisner's blood alcohol concentration was inadmissible. The court excluded the test results because the breath test was conducted in a law enforcement patrol vehicle, which the court concluded was improper under the regulations promulgated by the Department of Health and Senior Services ("DHSS"). Because it found that there was no competent evidence establishing that Weisner had a blood alcohol concentration above the legal limit, the circuit court set aside the suspension of Weisner's driving privileges.

The Director of Revenue appeals. Consistent with our recent decision in *Baker v. Director of Revenue*, No. WD81325, 2019 WL 610383 (Mo. App. W.D. Feb.

13, 2019), we hold that the circuit court erroneously determined that the results of Weisner's breath test were inadmissible. We accordingly reverse the judgment of the circuit court, and remand the case for further proceedings consistent with this opinion.

## Factual Background

At approximately 3:00 a.m. on July 30, 2016, Missouri State Highway Patrol Trooper Aaron Engelhart observed a car driven by Weisner on westbound Interstate 70 in Jackson County. Weisner's car failed to stay within a single lane, and Trooper Engelhart initiated a traffic stop. When Weisner was seated in his patrol car, Trooper Engelhart noted a strong odor of intoxicants coming from her breath, and that Weisner's speech was slurred and rambling. Weisner admitted that she had consumed two alcoholic beverages, and that her last drink was approximately one hour earlier.

Weisner permitted Trooper Engelhart to perform the horizontal gaze nystagmus ("HGN") test. Weisner exhibited six clues of intoxication on the HGN test. Trooper Engelhart then asked Weisner whether she would perform field sobriety tests, and she indicated that she would. When they exited Trooper Engelhart's patrol vehicle to perform the tests, Weisner failed to follow Trooper Engelhart's directions, and walked toward the traffic lanes of the highway. Because he feared that Weisner would not stop and would walk into traffic, Trooper Engelhart grabbed her arm and pulled her back onto the highway's shoulder. Weisner stated that she would not return to Trooper Engelhart's vehicle. He then placed her under arrest for driving while intoxicated.

Once they were again seated in Trooper Engelhart's patrol vehicle, the Trooper read Weisner Missouri's Implied Consent warning, and Weisner agreed to submit to a breath test. Trooper Engelhart performed a mouth check, and Weisner stated that she had nothing in her mouth. Trooper Engelhart then observed

2

Weisner for twenty-four minutes, during which she did not smoke, vomit, or introduce anything into her mouth. Weisner then submitted a breath sample, which was tested using the Alco-Sensor IV with printer ("AS-IV-P") breath analyzer. The breath testing occurred inside Trooper Engelhart's patrol vehicle. The breath test result indicated that Weisner's blood alcohol concentration was .104%.

The Director of Revenue suspended Weisner's driving privileges pursuant to § 302.505, RSMo. The suspension of Weisner's driver's license was upheld following an administrative hearing. She then petitioned the circuit court for a trial *de novo* pursuant to § 302.535, RSMo.

The circuit court conducted a bench trial on October 3, 2017. When the Director's counsel asked Trooper Engelhart to testify concerning the results of the breath test, Weisner's counsel objected that performing the breath test in Trooper Engelhart's patrol vehicle violated the DHSS's regulations. The court overruled the objection, although it indicated that it would reexamine the admissibility issue following the conclusion of the evidence, based on legal authorities submitted by the parties. Trooper Engelhart then testified that Weisner's breath test indicated that she had a blood alcohol concentration of .104%.

The circuit court entered its judgment setting aside the suspension of Weisner's driving privileges on December 18, 2017. The judgment found that the testing of Weisner's breath occurred in an improper location, and that the breath test results were accordingly inadmissible. The court recognized that 19 C.S.R. 25-30.050(2) specifies that "[b]reath analyzers are to be used within buildings or vehicles used for driving-while-intoxicated enforcement." The circuit court interpreted this regulation as authorizing breath testing "in a building or in a vehicle specifically designed for its placement, e.g. a mobile van, 'BAT' [Breath Alcohol Testing] vehicle, etc." The judgment also noted that the report form

3

included in the DHSS's regulations requires the device operator to certify that "[n]o radio transmission occurred *inside the room* where and when the test was being conducted."  19 C.S.R. 25-3.060, Form #8 (emphasis added).  The court concluded that "the Officer's patrol car is not a room as required by the certification on [DHSS] Form 8."

Given its exclusion of the breath test results, the circuit court concluded that the Director had failed to submit "admissible evidence of [Weisner] having provided a sample in excess of .08 BAC."  The court accordingly set aside the suspension of Weisner's driving privileges.

The Director of Revenue appeals.[1]

**Discussion**

In order to sustain the suspension of an individual's driving privileges under § 302.505.1, RSMo, the Director of Revenue must prove at a trial *de novo* that "(1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's [blood alcohol concentration] exceeded the legal limit of .08 percent."  *Shanks v. Dir. of Revenue*, 534 S.W.3d 381, 386 (Mo. App. W.D. 2017) (citation and internal quotation marks omitted).

> To establish that a driver's [blood alcohol concentration] was over the legal limit, the Director may introduce evidence of the results of a breath analyzer test.  To lay a foundation for admission of those results, the Director must establish that the test was performed using the approved techniques and methods of DHSS, by an operator holding a valid permit and on equipment and devices approved by the DHSS.

*Roam v. Dir. of Revenue*, 559 S.W.3d 1, 3 (Mo. App. E.D. 2018) (citing *Gallagher v. Dir. of Revenue*, 487 S.W.3d 24, 26 (Mo. App. E.D. 2016)); *see also* § 577.037, RSMo.

---

[1] Weisner did not file a Respondent's Brief.  "'A respondent is not required to file a brief, but without one, we must adjudicate the claim of error without benefit of whatever argument the respondent might have presented."  *In the Interest of F.R.D.*, 481 S.W.3d 32, 34 n.4 (Mo. App. W.D. 2015) (citations and internal quotation marks omitted).

The Director argues that the trial court erred in concluding that Weisner's breath test results were inadmissible because the test was conducted in an improper location.

We recently addressed this precise issue in *Baker v. Director of Revenue*, No. WD81325, 2019 WL 610383 (Mo. App. W.D. Feb. 13, 2019). *Baker* held that a law enforcement officer's patrol vehicle, which was used for general enforcement of traffic laws, constituted a "vehicle used for driving-while-intoxicated enforcement" within the meaning of 19 C.S.R. 25-30.050(2), and was therefore a permissible location for breath testing. *Baker*, 2018 WL 610383, at *3. In reaching this conclusion, *Baker* followed the Eastern District's decision in *Marquart v. Director of Revenue*, 549 S.W.3d 56, 59–60 (Mo. App. E.D. 2018).

*Baker* also held that, although the DHSS's reporting form required the test administrator to certify that "[n]o radio transmission occurred *inside the room* where and when the test was being conducted," 19 C.S.R. 25-30.060, Form #8 (emphasis added), this certification provision did not alter the locations in which breath testing could be conducted. *Baker* held that the certification provision could be harmonized with 19 C.S.R. 25-30.050(2), by interpreting the word "room" as used on Form #8 to refer to "a defined or enclosed space." *Baker*, 2018 WL 610383, at *5. Even if the certification provision on Form #8 were interpreted to conflict with the 19 C.S.R. 25-30.050(2), *Baker* held that the regulation must prevail over the certification section of the form, because the regulation was the more specific provision addressing the permissible locations for breath testing. *Id.*, 2018 WL 610383, at *5–*6.

For the reasons more fully explained in the *Baker* decision, the circuit court erred in this case by excluding the breath test results on the basis that the breath test was conducted in an improper location. We accordingly reverse the judgment of the circuit court. Even if the breath test was conducted consistently with DHSS

5

regulations and was therefore admissible, however, the circuit court as finder of fact was required to determine whether the breath test results, and the other evidence offered by the Director, were credible. *See, e.g.*, *Messner v. Dir. of Revenue*, 469 S.W.3d 476, 482–83 (Mo. App. W.D. 2015). Based on its conclusion that the breath test results were inadmissible, the circuit court did not assess the probative value or weight of the Director's evidence. We remand the case to the circuit court for it to determine, as fact-finder, whether the Director has met his burden of proof to sustain the suspension of Baker's driving privileges.[2]

## Conclusion

The judgment of the circuit court is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
Alok Ahuja, Judge

All concur.

---

[2] In *Baker*, we reversed the judgment of the circuit court, and remanded the case for a new trial. In *Baker*, the circuit court excluded evidence of the breath test results *during* trial, and it was therefore unknown whether the driver would have made additional evidentiary objections, or would have presented additional evidence to rebut the breath test results, if the test results had been admitted. We therefore concluded that remand for a new trial was warranted. The procedural history of this case is different: here, the circuit court _overruled_ Weisner's objection during trial, and admitted the breath test results. Therefore, if Weisner had additional objections or evidence to present, she could—and should—have done so during the trial. A new trial is unwarranted in this case.